IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DAVID MCCOMBS,                               )
                                             )
        Plaintiff,                         )
                                             )
v.                                           )     Case No. 15-CV-395-PJC
                                             )
CAROLYN W. COLVIN,                           )
Acting Commissioner of the                   )
Social Security Administration,              )
                                             )
        Defendant.                         )

## OPINION AND ORDER

Plaintiff, David McCombs, seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying McCombs' application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the Commissioner's decision is **REVERSED AND REMANDED.**

### Procedural History

McCombs filed an application for disability insurance benefits with a protective filing date of July 17, 2012. (R. 146.) He alleged onset of disability as of November 9, 2010. (R. 146, 150.) McCombs claimed he was disabled due to lower back fusion, neck fusion, arthritis and incontinence. (R. 150). He later claimed disability due to hip pain (R. 167), and problems with his left lower hip and back. (R. 174).

The application was denied initially and on reconsideration. (R. 66, 67). An administrative hearing was held before Administrative Law Judge ("ALJ") Belinda D.

Crutchfield on October 9, 2013. (R. 23 – 43). At the hearing, the onset date was amended to July 1, 2012.

By decision dated January 2, 2014, the ALJ ruled that McCombs was not disabled under section 216(i) and 223(d) of the Social Security Act through December 31, 2013, the last date insured. (R. 12-19). McCombs requested review of the decision, and, on June 17, 2015, the Appeals Council denied review. (R. 1-3). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). McCombs timely sought review by this Court.

**Claimant's Background**

McCombs was born February 13, 1961. (R. 33, 138). He was 49 years old on his alleged disability onset date, November 9, 2010, and he was 52 years old at the time of the ALJ's decision on January 2, 2014. (R. 19). He completed high school, but received a GED, and had a year and a half of college. (R. 41, 151). His most recent work experience involved being a pressman for many years in a printing business, but he quit working on October 9, 2010, because the business closed. (R. 150 – 151; *see* R. 42-43).

In an Adult Function Report completed November 6, 2012 (Ex. 3E), McCombs reported that his condition limits his ability to work because he cannot (a) pass physical examinations,(b) be away too long or too far from restrooms, (c) stand or walk for too long and (d) sit in one place for very long. (R. 157). When he awakes, he takes his medicines, showers, and tries to walk a little. (R. 158). Before his surgeries and arthritis, he could do "just about anything." (R. 158). Because of incontinence, he gets up four to six times per night. (R. 158). He has no problem with personal care. (R. 158-159).

McCombs reported that he prepares meals one or two times a day, but he cannot stand and make big dinners, so he prepares frozen meals and sandwiches. (R. 159). It takes him between half an hour and an hour to wash dishes. (R. 158). He cannot do yard work because of back pain and arthritis, but he goes outside once or twice a day. (R. 160). He drives a car, and he shops for groceries approximately once a week. (R. 160). He is able to pay bills, count change, maintain a savings account, and use a checkbook or money orders. (R. 160). His hobbies include watching television, shooting pool, and hunting, but he cannot sit too long to read or watch television, and can no longer shoot pool or hunt because of his condition. (R. 161). McCombs claims that his physical problems affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use his hands. (R. 162). He can walk about 100 yards before he needs to stop and rest. (R. 162). He follows written and spoken instructions well, and gets along well with authority figures. (R. 162).

At the administrative hearing, McCombs testified that he is about 6'1" and weighs about 230 pounds. (R. 34). His home has steps going up the front door. (R. 37). His wife is disabled due to gout and back problems, and she receives disability benefits. (R. 37-38, 42). McCombs sustained a back injury on the job and filed a worker's compensation claim in 1985. He received a settlement from it. (R. 38-39). McCombs is able to drive, and does so approximately three days a week. (R. 39-40). He has a handicapped parking sticker. (R. 58). His hobby is making model cars. (R. 40). He is a Marine Corps veteran. (R. 42).

McCombs testified at the hearing that he is not able to work because of his back and not being able to walk. (R. 44). He claimed that his back was getting worse and that is why he went to the Indian Clinic, where he had a CT-scan. (*Id.*) He broke his lower back and, later, his neck between the C3 and C4 vertebrae. He first broke his back in 1985 and had surgery at that time.

(R. 44-45). He injured his neck in a motor vehicle accident about three years later, and he had surgery on it that same day. He continued to work after both of these surgeries. (R. 45).

McCombs claims that he is not able to stand or sit for long periods of time. He says that he has to continually change positions. (R. 46). He cannot walk far, because, when he walks, he is in extreme pain. He described the pain as if someone has a knife in his hip. (R. 47). His medications include Lortab, Tizanidine, Metoprolol, Oxycontin and Oxybutynin. (R. 47, 170). He reported on September 28, 2013, that he also takes Diclofenac for his arthritis. (R. 170).

McCombs also testified that he has no control over his bladder and cannot empty it. It affects his ability to work because he has to be close to the bathroom at all times. He also awakes often during the night to go to the restroom and, during the daytime, he has to go about every 15 – 20 minutes. He does not wear any kind of undergarment to help with the problem. (R. 48). However, he testified that his back is his main problem. He had not been able to assist his wife in getting out of her chair, and has to call his son to help transfer her. (R. 49). He was able to help her until a few days before the hearing. (R. 50).

On an average day, McCombs tries to prepare "something quick" for breakfast. He then reads or works on a model car, and he works on model cars from a standing position. (R. 50). He works on a model for about 10 to 15 minutes and then sits down. Some days he cannot work on a model at all. (R. 51). His wife does most of the household chores when she is able. (R. 54). Someone else mows his yard. (R. 54-55). He cannot help with the household chores because he cannot bend over due to pain. (R. 55). McCombs claimed, at the hearing, that he can no longer shop at the grocery store because of the walking involved. (R. 58.)

McCombs asserts that, when his disability began in July, 2010, his average pain level, on a scale of 1- 10, was about five to six. (R. 56). At the time of the hearing in October, 2013, he

4

rated his pain at seven to nine daily while he was taking his medication. (R. 57). Without his medications, he stated, he would not be moving at all. R. (57). He felt that he could be on his feet for a maximum of 30 minutes before he would experience extreme pain. The pain was in his hip, even though the CT scan showed that his back was the problem. (R. 57).

McCombs' previous work experience as a printer is a medium skilled job with an SVP of 7. (R. 61). The ALJ asked the vocational expert at the hearing to assume that someone of the same age, education and past experience as the claimant is able to perform a full range of light exertional work-related activities, but could never climb ladders, ropes or scaffolds. The ALJ's hypothetical question also asked the vocational expert to assume that this person could occasionally crouch, climb stairs or ramps, crawl, kneel, stoop, and only occasionally bend at the knees. (R. 61). The vocational expert testified that such a person could not return to his or her work and had no transferrable skills, but such a person could perform light, unskilled work as a bakery worker, a bench assembler, and an assembler of electrical equipment. (R. 61-62).

Significantly, the ALJ asked the attorney for McCombs whether there were any additional medical records that would specifically support the Residual Functional Capacity (RFC) finding of standing and walking for less than two of eight hours. (R. 62). The attorney replied that the ALJ had all records of Harvard Family Physicians, P.C. (Ex. 7F) to support the RFC. Although the attorney had earlier informed the ALJ that she planned to obtain and submit additional records from Claremore Indian Hospital (*see* R. 27 – 30), she did mention the possibility that these might support the RFC at this point in the hearing. Presumably, she had not yet seen these additional records. The vocational expert testified that, assuming someone of the same age, education and past experience as the claimant, who could stand or walk less than two of eight hours in a day, the person would not be able to return to past work of the claimant or any

5

other jobs that could be performed. Nor would such person be able to work if the medical evidence of record supported the limitations to which McCombs testified. (R. 63).

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1] *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

### Decision of the Administrative Law Judge

In her decision, the ALJ found that McCombs met insured status requirements through December 31, 2013, and, at Step One, that he had not engaged in any substantial gainful activity since his alleged onset date of July 1, 2012. (R. 14). She found at Step Two that McCombs had the severe impairments of degenerative disk disease of the lumbar spine, borderline obesity, and hypertension. (*Id.*) Additionally, she found McCombs' incontinence did not satisfy agency severity requirements. (*Id.*) At Step Three, she found that claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any listing. (R. 15). She found that McCombs had the RFC to perform less than a full range of light work. He could occasionally climb stairs and ramps, but should never climb ladders, ropes or scaffolds. Stooping, kneeling, crouching, and crawling could also be performed occasionally. (*Id.*)

At Step Four, the ALJ determined that McCombs was unable to perform any past relevant work. (R. 17). The ALJ then determined, at Step Five, that transferability of job skills was not material to the determination of disability, and there were jobs that existed in significant numbers in the national economy that the claimant could have performed, given his age,

education, work experience, and residual functional capacity.  (R. 18).  The ALJ concluded that McCombs was not under a disability, as defined in the Social Security Act, at any time from July 1, 2012 through December 31, 2013.  (R. 19).

## Review and Analysis

On appeal, McCombs argues that (1) the ALJ failed to properly consider the treating physician's opinion, and (2) the ALJ failed to properly consider the Plaintiff's credibility.  As part of both arguments, McCombs points out that evidence submitted after the hearing was not considered by the ALJ, and it appears that the Appeals Council did not consider it either.  This evidence included a lumbar CT scan taken at an Indian Health Service hospital in Claremore, Oklahoma on June 25, 2013.  (Ex. 8F)

The records show that McCombs presented at the Claremore Indian Hospital on June 25, 2013, complaining of "lower left lumbar pain radiating into buttocks," and stated that the "pain has been going on for about 6 months." (R. 317).

The CT scan findings report included the following notations, among others:

> Lumbar vertebrae are intact with evidence for spondylolisthesis or spondylolysis form L1-L4.  Multilevel spondylosis is present.
> L3-L4 mild spinal stenosis is due to disc bulge, severe degenerative facet arthropathy and hypertrophy of the ligamentum flavum.  Bilateral mild impingement of the exiting nerve roots is seen.
> \* \* \*
> The L5-S1 intraspinal structures are obscured by post operative surgical hardware defect.

(R. 325.)  The diagnostic impression also indicated "loss of intraspinal soft tissue detail," and "atherosclerosis" in addition to the "L3-L4, L4-L5 spinal stenosis with bilateral impingement of the exiting nerve roots." (R. 326).  Subsequently, the Indian Health Service physician recommended that McCombs have a neurosurgery evaluation, and his name was put on a waiting list for scheduling if funding became available.  (R. 180-181).

8

The records of McCombs' visit to the Claremore Indian Hospital were printed on October 7, 2013, just two days before the administrative hearing. At the hearing, McCombs' attorney told the ALJ that she had requested these records, and she asked the ALJ to leave the record open so that they could be submitted. The attorney stated that they were not submitted earlier due to a typographical error in requesting the records from July of 2013 forward. The attorney later realized, she said, that McCombs had an appointment at the hospital in June, 2013. (R. 27). The ALJ stated that the additional records could be submitted and she would have the assigned writer contact her if they were. (R. 28.) The attorney specifically stated,

> [T]he reason I'm asking to leave the record open, the claimant had a CT-scan which more in-depth shows the condition of his back. He was also sent out for a neurosurgery evaluation through the Cla[re]more Indian Hospital, but it wasn't – they put him on hold because they were out of funds for it and that's what we turned in.

(R. 29). The ALJ again stated that she would note in the file that additional records might be submitted and, if so, the writer was to contact her. (R. 30).

McCombs' attorney did not point to this evidence in the brief she submitted to the Appeals Council (*see* R. 4-5, 182-183), and it is not clear when the medical records at Exhibit 8F were provided. It does appear that the letter regarding the recommendation for a neurosurgery evaluation was faxed to the Social Security Administration, along with a form listing McCombs' medications, on October 4, 2013. (*See* R. 179 – 181). In any event, a reviewing court "must consider the entire record, including [the newly-submitted] treatment records, in conducting [its] review for substantial evidence on the issues presented." *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006). The ALJ did not mention the CT scan, the recommendation for a neurosurgery evaluation, or any other Claremore Indian Hospital evidence in her decision.

Instead, the ALJ considered the opinion of the treating physician, Michael Foster, M.D. and the opinion of Seth Nodine, who provided a consultative examination. Dr. Foster opined on

9

January 24, 2013, that McCombs was limited to less than two hours of standing or walking due to degenerative disc disease, "causing chronic pain and decreased mobility." (R. 309). Dr. Foster also signed a handicapped parking placard application, indicating that McCombs was "severely limited in his or her ability to walk due to an arthritic neurological, or orthopedic condition, . . ." (R. 311). On July 25, 2013, notes which appear to be in Dr. Foster's handwriting show that McCombs was seen at Claremore Indian Hospital and had a CT scan of his lumbar spine and a referral for neurosurgery. (R. 313). Although the notes are not entirely legible, they appear to indicate that McCombs was hoping for disability and needed a refill of his pain medications. (*Id.*) Notes taken on April 25, 2013, appear to show that McCombs presented again and complained of worsening pain in his hip and back. (R. 314). Again, the notes are almost illegible, but there appear to be references to worsening pain, tenderness, radiation of pain and decreased range of motion. (*Id.*)

Nonetheless, the ALJ assigned no controlling weight to Dr. Foster's RFC because "[h]e gives no rational in the opinion or elsewhere as to how he reached the limitation. It is not supported by any other source." (R. 17). Instead, the ALJ gave "great weight" to the consultative evaluation by Dr. Nodine, who examined McCombs on December 12, 2012. Dr. Nodine reported McCombs' complaints, history, and range of motion, among other things. (R. 298-300). His assessment was, in relevant part, that McCombs had "diffuse spinal degenerative changes status post fusion of the cervical and lumbar spine remote in history. He has not had any recent radiographic studies and there very well could be some abnormality of the hardware which is in place as it has not been looked at in quite some time." (R. 300).

Apparently unbeknownst to Dr. Nodine, an x-ray of McCombs' lumbar spine was being read that same day by Taylor Lancaster, M.D. Dr. Lancaster's findings were as follows:

"Postsurgical changes of fusion at L5-S1 are demonstrated.  No evidence of hardware failure is demonstrated.  There is minimal anterior wedging at L4 with approximately 10 percent height loss anteriorly.  This appears chronic.  Alignment is normal.  Remaining vertebral body heights and intervertebral disc spaces are maintained.  No acute fracture or subluxation."  (R. 295).  He also indicated in his diagnostic impression that McCombs had "degenerative changes of the lumbar spine." (*Id.*)  The ALJ noted these findings, but thought them supportive of Dr. Nodine's examination and unsupportive of McCombs' subjective complaints.

The ALJ found that McCombs' medically determinable impairments could reasonably be expected to cause his alleged symptoms, but McCombs' statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.  In the ALJ's opinion, McCombs' claim that he could walk only 100 yards was not supported by the medical record and, in particular, it was not supported by the x-rays Dr. Lancaster read.  Further, Dr. Nodine "did not define the impairments as disabling or even particularly severe."  (R. 17).  The ALJ then discussed the divergent nature of the medical records and McCombs' allegations of severe incontinence.

A treating physician opinion must be given controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial evidence in the record. *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (quoting *Robinson v Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).  "When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. §404.1527(c)(2) and give good reasons for the weight he assigns to the opinion." *Vigil v. Colvin*, 805 F.3d 1199, 1201-1202 (10th Cir. 2015) (citations omitted).  When an RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8P (S.S.A.), 1996 WL 374184 at *7.

However, ultimately "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citing 20 C.F.R. § 416.927(e)(2); SSR 96-5p, 1996 WL 374183, at *5)).

The weights assigned by the ALJ to the various opinions might have been different if she had considered the CT scan of McCombs' lumbar spine from the Claremore Indian Hospital. These and other records from the Claremore Indian Hospital might have altered the ALJ's decision in this case, if they had been before the ALJ when she made her decision, or they might have altered the decision of the Appeals Council. After considering this newly-submitted evidence, the Court finds that the ALJ's RFC determination is no longer supported by substantial evidence. *See, e.g., Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (newly-submitted evidence called into question ALJ's disposition).[2]

Consideration of the Claremore Indian Hospital CT scan might have altered the ALJ's credibility determination as well. Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1498-1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002). In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186. Yet, "common sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

---

[2] The failure of the Appeals Council to consider the newly-submitted evidence also necessitates remand. *Threet*, 353 F.3d at 1191-92

The ALJ in this case found McCombs' testimony and statements made in written documents internally inconsistent and unsubstantiated by the objective medical evidence before her. (R. 16-17). The ALJ pointed to the fact that McCombs continued working after his back and neck surgeries, and he was able to sit through the hearing even though he complained of the need to go to the restroom every 14-20 minutes during the day. (*Id*.) The ALJ's decision also includes references to McCombs' statements in the function report contrasted with Dr. Nodine's statements in his assessment. The inconsistencies are primarily targeted at McCombs' claims of incontinence, however, and not his complaints of lower back pain and its' effects on his ability to walk, or work. (*Id*. at 17.)

On remand, the ALJ may wish to obtain an updated consultative examination, given the material change to the record represented by McCombs' visit to the Claremore Indian Hospital. *See Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012) (appeals court encouraged ALJ on remand to obtain updated exam when opinion of agency examining consultant was "patently stale" in that the relevant medical record had "material changes" after consultant's report). On remand, as the Tenth Circuit did in *Chapo*, the undersigned encourages the ALJ to obtain an updated examination and/or report "to forestall any potential problem arising in this respect on remand." *Id.*

## Conclusion

The Court takes no position on the merits of McCombs' disability claim, and "[no] particular result" is ordered on remand. *See Thompson v. Sullivan*, 987 F.2d 1482, 1493 (10th Cir. 1993). This case should be remanded only to assure that "the correct legal standards are invoked in reaching a decision based on the facts of the case." *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *quoting Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). For the reasons

13

set forth above, the Commissioner's decision is hereby **REVERSED AND REMANDED.**

Entered this 20th day of October, 2016.

_____
Paul J. Cleary
United States Magistrate Judge